**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| JOHN KEENER, *individually and on behalf of Crab Pot LLC, Awshucks SC, LLC d/b/a Oyster House, CCH-Market, LLC d/b/a Charleston Crabhouse-Market Street, and Huntmasters, Inc.*, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | No. 2:22-cv-1640-DCN |
| vs. | ) ) | **ORDER** |
| UNITED STATES OF AMERICA; SMALL BUSINESS ADMINISTRATION; and ISABELLA CASILLAS GUZMAN, *in her official capacity as Administrator of the Small Business Administration*, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

The following matter is before the court on defendants United States of America (the "United States"), the Small Business Administration (the "SBA") and Isabella Casillas Guzman's ("Guzman") (collectively, "defendants") motions to dismiss, ECF Nos. 15, 27. For the reasons set forth below, the court grants the motions and dismisses the case.

## I.   BACKGROUND

John Keener ("Keener"), individually and on behalf of Crab Pot LLC, Awshucks SC, LLC d/b/a/ Oyster House, CCH-Market, LLC d/b/a Charleston Crabhouse-Market Street, and Huntmasters, Inc., (collectively, "plaintiff restaurants," and with Keener, "plaintiffs") brought this action against the SBA alleging that its gender- and race-based considerations for the Restaurant Revitalization Fund ("RRF") that is included in Section

1

5003 of the American Rescue Plan Act, Pub. L. 117-2 ("ARPA"), violated plaintiffs' constitutionally-protected rights.  ECF No. 1, Compl. at 1–2.

Section 5003 of ARPA appropriated $28.6 billion to create the RRF.  ARPA § 5003(b); 2d Amend. Compl. ¶ 19.  The RRF was administered by the SBA and provided grants to restaurants adversely impacted by the COVID-19 pandemic.  2d Amend. Compl. ¶¶ 19–21.  Grant recipients were not required to repay the funds so long as they were used on specified eligible expenses.  ARPA §§ 5003(c)(5)–(6).  ARPA further provided that, during the first twenty-one days of the RRF's operation, the SBA Administrator:

> shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 3(n) of the Small Business Act (15 U.S.C. 632(n))), small business concerns owned and controlled by veterans (as defined in section 3(q) of such Act (15 U.S.C. 632(q))), or socially and economically disadvantaged small business concerns (as defined in section 8(a)(4)(A) of the Small Business Act (15 U.S.C. 637(a)(4)(A))).

ARPA § 5003(c)(3)(A); 2d Amend. Compl. ¶ 21.  Because the priority period was open to "socially and economically disadvantaged small business concerns," applicants within that category must meet both criteria to qualify.  After the twenty-one-day priority period, SBA "shall award grants to the eligible entities in the order in which applications [were] received."  ARPA § 5003(c)(1).

ARPA incorporates another federal law called the Small Business Act, 15 U.S.C. § 637(a)(4)(A), which provides that "[s]ocially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities."  2d Amend. Compl. ¶ 22.  Those regulations further define "socially disadvantaged individuals" and "economically disadvantaged individuals" with a presumption that certain minority

2

groups meet the criteria—namely, Black Americans; Hispanic Americans; Native Americans (including Alaska Natives and Native Hawaiians); Asian Pacific Americans; or Subcontinent Asian Americans.  Id. ¶ 23 (citing 13 C.F.R. §§ 124.103–104).  This presumption may be rebutted with "credible evidence to the contrary."  13 C.F.R. § 124.103(b)(3).  Further, those who are not presumptively socially disadvantaged may establish individual social disadvantage by providing evidence of a distinguishing feature that has limited their advancement or entry into the business world.  Id. §§ 124.103(c)(1)–(2).  Those who are not presumptively economically disadvantaged must meet other criteria.  Namely, the SBA "examines[s] factors relating to the personal financial condition of [the] individual. . . , including income for the past three years. . . , personal net worth, and the fair market value of all asserts . . . ."  Id. § 124.104(c).

In accordance with Section 5003(c)(3)(A) of ARPA, the SBA announced that during the priority period, it would "accept applications from all eligible Applicants," but would "distribute funds only for approved applications where the Applicant has self-certified that it meets the eligibility requirements for a small business concern at least 51 percent owned and controlled by women, veterans, or socially and economically disadvantaged individuals."  SBA, Restaurant Revitalization Funding Program: Program Guide as of April 28, 2021, at 16, https://www.sba.gov/sites/default/files/2021-04/Restaurant%20Revitalization%20Fund%20Program%20Guide%20as%20of%204.28.21-508_0.pdf (last accessed March 13, 2023).

On July 2, 2021, the SBA announced the closure of the RRF program.  SBA, SBA Administrator Announces Closure of Restaurant Revitalization Fund Program, (July 2, 2021), https://www.sba.gov/article/2021/jul/02/sba-administrator-announces-closure-

restaurant-revitalization-fund-program (last accessed March 13, 2023).  As of June 30, 2021, the RRF program received more than 278,000 submitted eligible applications representing over $72.2 billion in requested funds.  Id.  Of the $28.6 billion appropriated to the program, approximate $18 billion went to underserved populations as defined by the statute.  Id.  Presumably, the remaining approximately $10.6 billion was awarded to eligible applications not identified as part of an underserved group.  See id.

On November 1, 2022, four members of Congress wrote to Guzman, the Administrator of the SBA, requesting that the SBA announce its plan to release all unobligated funds from the RRF authorized under ARPA to eligible applicants.  See ECF No. 26-2.  Their letter was based on a report from the Government Accountability Office that stated that as of June 2022, $180 million of RRF funds remained unobligated.  Id.  The letter also requested that the SBA submit to Congress "detailed information regarding the agency's progress in retrieving misallocated funds."  Id.

Keener applied for a grant under the RRF on May 3, 2021.  2d Amend. Compl. ¶ 30.  He claims that as a part of applying for a grant, he chose "white" as his race and "male" as his gender, "which means his application was pushed to the back of the queue behind certain minority applicants and women."  Id. ¶ 31.  Plaintiffs did not receive any grant money, and Keener alleges that he was "unfairly discriminated against on the basis of race and gender."  Id. ¶¶ 36, 39.  Around one year later, this lawsuit followed.

On May 24, 2022, plaintiffs filed the complaint against the defendants.  Compl. On August 2, 2022, plaintiffs amended the complaint for the first time.  ECF No. 9, Amend. Compl.  On October 11, 2022, the defendants filed their first motion to dismiss. ECF No. 15.  On November 14, 2022, plaintiffs filed their second amended complaint,

now the operative complaint, which mooted defendants' first motion to dismiss. ECF No. 26, 2d Amend. Compl. On December 12, 2022, the defendants filed their second motion to dismiss. ECF No. 27. Plaintiffs responded in opposition on January 20, 2023, ECF No. 30, to which the defendants replied on February 6, 2023, ECF No. 34. As such, the motions have been fully briefed and the matter is now ripe for review.

## II.  STANDARD

### A.  Fed. R. Civ. P. 12(b)(1)

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the pleading fails to state facts upon which jurisdiction can be founded. It is the petitioner's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the [pleading] alone; (2) the [pleading] supplemented by undisputed facts evidenced in the record; or (3) the [pleading] supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

### B.  Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588

F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

Plaintiffs allege three causes of action. 2d Amend. Compl. ¶¶ 42–79. First, plaintiffs allege a violation of the Fourteenth Amendment's due process and equal protection rights. Id. ¶¶ 42–62. Second, plaintiffs allege a violation of Title VI—specifically, plaintiffs claim the federal government violated 42 U.S.C. § 2000d et seq., which prohibits the exclusion of individuals from participation in or from denial of

benefits from a federally funded program on the grounds of race, color, or national origin. Id. ¶¶ 63–72. Third, plaintiffs seek injunctive relief asking the court to require the defendants to fund plaintiffs' applications. Id. ¶¶ 73–79. Preliminarily, the first and third causes of action require the court to engage in a generous amount of interpretation of the arguments. First, plaintiffs incorrectly bring a Fourteenth Amendment claim for equal protection and due process when they should bring a Fifth Amendment claim since the claim is against the federal government, not a state or local entity.[1] Second, plaintiffs seek injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 (declaratory judgments) and 5 U.S.C. §§ 702, 706 (judicial review pursuant to the Administrative Procedure Act ("APA")), which have different standards of review and therefore should be considered independently of each other. 2d Amend. Compl. ¶ 76.

---

[1] Under the Due Process Clause of the Fifth Amendment, no person may "be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. This guarantee has a procedural as well as a substantive component. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 856 (1998); Martin v. St. Mary's Dep't of Soc. Servs., 346 F.3d 502, 511 (4th Cir. 2003). Procedural due process ensures that the government employs fair procedures when it seeks to deprive an individual of liberty or property. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); D.B. v. Cardall, 826 F.3d 721, 741 (4th Cir. 2016). But, the Fifth Amendment assures "more than fair process." Washington v. Glucksberg, 521 U.S. 702, 719 (1997). Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-02 (1993) (emphasis in original). In addition to procedural and substantive due process, the Supreme Court has held that the Fifth Amendment implicitly guarantees the right to equal treatment enshrined in the Fourteenth Amendment. See Bolling v. Sharpe, 347 U.S. 497 (1954); see also United States v. Windsor, 570 U.S. 744, 774 ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."). Thus, courts apply Fourteenth Amendment jurisprudence to equal protection claims brought against the federal government. See Buckley v. Valeo, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."); accord Sessions v. Morales-Santana, 582 U.S. 47, 52 n.1 (2017).

Defendants' arguments for dismissal can most easily be distilled into two umbrella arguments: (1) dismissal for lack of subject matter jurisdiction, and (2) dismissal for failure to state a claim.  First, defendants argue there is no subject matter jurisdiction because: (a) plaintiffs cannot show actual or imminent injury and therefore lack standing; (b) the contested priority period has ended meaning the claim regarding that period is moot; and (c) there is no final agency action that would allow an APA claim to proceed, meaning that the claim is not ripe.  ECF No. 27.  Second, defendants argue that plaintiffs have failed to state a claim because: (a) the elements for declaratory relief are not met; (b) the APA's waiver of sovereign immunity is not applicable; and (c) Title VI claims do not apply to federal agency administrative programs.  Id.  Plaintiffs filed a short response in opposition alleging that the imminent agency action is the depletion of the unobligated funds in the RRF, arguing that the ending of the priority period counts as final agency action, and claiming that since Congress did not expressly prohibit waiver of sovereign immunity, the suit is not prohibited.  ECF No. 30.  In reply, defendants reiterate that there is no plausible claim for injunctive relief and directly contest plaintiffs' sovereign immunity arguments, saying that Congress has not explicitly waived the SBA's sovereign immunity for claims relating to the RRF.  The court examines the arguments in turn.

### A.  Standing

To have standing, a plaintiff must "[1] present an injury that is concrete, particularized, and actual or imminent; [2] fairly traceable to the defendant's challenged behavior; and [3] likely to be redressed by a favorable ruling."  Davis v. Fed. Elec. Comm'n, 554 U.S. 724, 733 (2008).  "For a legal dispute to qualify as a genuine case or

controversy, at least one plaintiff must have standing to sue." Dep't of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019).  Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

### 1.  Injury in Fact

Defendants' only argument regarding standing is that plaintiffs have failed to allege injury in fact—defendants do not challenge that the injury is fairly traceable to the defendants' challenged behavior or that it is likely to be redressed by a favorable ruling. Specifically, defendants argue that plaintiffs lack standing to seek injunctive or declaratory relief relating to the long-expired priority period.  ECF No. 27 at 8.  In support of this argument, defendants point to the fact that SBA has twice stated under penalty of perjury that "because the statutory priority period is over, SBA will not take priority status into account when issuing new RRF awards." Id. (citation omitted). Plaintiffs have failed to explicitly establish standing, but have stated facts that allows the court to perform the standing analysis.  See 2d Amend. Compl.; ECF No. 30.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, 504 U.S. at 560).  While "imminence is concededly a somewhat elastic concept," a "threatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of possible future injury are not sufficient."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (cleaned up).  Rather, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a

'substantial risk' that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper, 568 U.S. at 414 n.5) (cleaned up).

The closest that plaintiffs come to directly alleging injury in fact is their response in opposition to the motion to dismiss where they allege "the Defendants' unconstitutional discrimination against Plaintiffs have caused exorbitant damages," though the nature and extent of those damages are not identified or explained. ECF No. 30 at 1. Otherwise, the second amended complaint and the response in opposition are silent as to the required elements of constitutional standing. See generally id.; 2d Amend. Compl. However, the court may construe the factual allegations in the second amended complaint to arrive at a plausible allegation of injury in fact. Specifically, because plaintiffs' applications were designated as non-priority, they were ineligible for the race-based and gender-based priority period, resulting in their otherwise eligible application failing to be funded despite Keener's prompt application on the first day of the application period. See 2d Amend. Compl. ¶¶ 30–36. Plaintiffs plausibly allege that Keener's status as a white male means that he did not qualify for the priority period under a presumption, and the application to prove both social and economic disadvantage was significantly more burdensome for him on the basis of Keener's race and gender. Consequently, that allegation could conceivably rise to the level of a constitutional violation and invasion of a legally protected interest that is particularized to plaintiffs. However, it is debatable whether the injury is ongoing or imminent since the SBA announced the closure of the RRF program on July 2, 2021—therefore, the program's gender- and race-based priority period is no longer in effect.

To have standing to seek an injunction, plaintiffs must show they are in immediate danger of sustaining some direct injury. City of L.A. v. Lyons, 461 U.S. 95, 101–02 (1983). Mere "[p]ast exposure to illegal conduct does not in itself show a present case." Id. at 103. That said, "continuing, present adverse effects" from past illegal conduct can suffice, and past wrongs are evidence bearing on whether there is a real and immediate threat of repeat injury. O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974). "The prospect of future injury becomes significantly less speculative where . . . plaintiffs have identified concrete and consistently-implemented policies claimed to produce such injury." Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec., 982 F.3d 671, 680 (4th Cir. 2020) (internal quotation marks omitted) (quoting In re Navy Chaplaincy, 697 F.3d 1176–77 (D.C. Cir. 2012)).

The few courts that have considered the issue of standing as it relates to the RRF grant program in ARPA have found that non-priority applicants have standing to challenge the gender- and race-based priority scheme. See, e.g., Vitolo v. Guzman, 2021 WL 2132106, at *2–3 (E.D. Tenn. May 25, 2021) (finding the plaintiffs had standing because the race-conscious language of both the SBA presumption and the definition of "socially disadvantaged" as applied in ARPA § 5003(c)(3)(A) denied them equal protection under the law since the processing of plaintiffs' RRF application was being delayed on the basis of race, which was an allegedly ongoing constitutional violation and an invasion of a legally protected interest that was particularized to the plaintiffs); Greer's Ranch Cafe v. Guzman, 540 F. Supp. 3d 638, 645–48 (N.D. Tex. 2021) (holding the plaintiffs had established standing because the "threatened unconstitutional use of racial and gender classifications explicit in Defendants' RRF grant prioritization scheme"

11

prevented plaintiffs from being considered for an RRF grant notwithstanding the fact that plaintiffs had not applied to the RRF program prior to filing a complaint with the court); Blessed Cajuns LLC v. Guzman, No. 4:21-cv-00677, slip op. at 9, ECF No. 18 (N.D. Tex. May 28, 2021) (applying the same reasoning as Greer and finding the plaintiffs had standing).  Each of those cases occurred while the fund still had money and the priority window for the grants was ongoing or had only recently closed such that priority grant applications remained ahead of non-priority applications.  To find a complete lack of injury-in-fact, the court likely needs more information about how the SBA is processing grants under the remaining funds of the RRF—namely, whether the priority groups no longer receive priority over non-priority applications that were filed earlier.

Though defendants do not challenge the second two requirements of standing, the court considers the additional standing requirements of traceability and redressability and finds them to be met.

### 2.  Fairly Traceable

"A plaintiff's injury satisfies the traceability element of standing when there is a causal connection between the injury and the defendant's conduct complained of by the plaintiff." Lujan, 504 U.S. at 560; Disability Rights of S.C. v. McMaster, 24 F.4th 893, 901 (4th Cir. 2022) (internal quotation marks and citations omitted).  "[T]he causation element of standing does not require the challenged action to be the sole or even the immediate cause of the injury." Sierra Club v. U.S. Dep't of the Interior, 899 F.3d 260, 284 (4th Cir. 2018).  Nonetheless, "[w]hile the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the independent action of some third party

not before the court." Disability Rights of S.C., 24 F.4th at 901 (internal quotation marks and citations omitted).

The court finds the causation prong met because it is the SBA's alleged process of prioritizing applications from persons of qualifying races or genders that caused the alleged injury. This case concerns the SBA's actions, and not those of a third party, which is sufficient for plaintiffs to plausibly allege causation.

### 3. Redressability

Moreover, "[a]n injury is redressable if it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 181 (2000). "A plaintiff's burden to establish redressability 'is not onerous': he must only 'show that [he] personally would benefit in a tangible way from the court's intervention.'" Disability Rights of S.C., 24 F.4th at 903 (quoting Deal v. Mercer Cnty. Bd. of Educ., 911 F.3d 183, 189 (4th Cir. 2018)). Accordingly, the "removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." Deal, 911 F.3d at 190 (quoting Sierra Club, 899 F.3d at 284) (emphasis added).

Plaintiffs possibly show that redressability is met depending on what it is they are asking the court to do. Certain actions are beyond the scope of the courts and therefore are not redressable by court action. See, e.g., Juliana v. United States, 947 F.3d 1159, 1175 (9th Cir. 2020) (finding that the relief requesting specific actions by the legislative and executive branches is not within the power of an Article III court to compel). If the court construes the complaint to assume the plaintiffs are asking the court to compel the SBA to process their application, regardless of funding outcome, that would meet the

13

redressability prong. <u>See</u> <u>Vitolo</u>, 999 F.3d at 366. However, if the plaintiffs are seeking

money damages under the APA, or to compel the agency to <u>fund</u> their applications,[2] a

court cannot compel such actions. <u>See</u> <u>Reboot Macon, LLC v. United States</u>, 2022 WL

4872480, at *2–3 (M.D. Ga. Oct. 3, 2022); <u>Reynolds Assocs. v. Kemp</u>, 974 F.2d 1331, at

*3 (4th Cir. 1992) ("It is plain, however that § 702 [of the APA] does not waive the

sovereign immunity of the United States in actions seeking money damages."); <u>Shahi v.</u>

<u>U.S. Dep't of State</u>, 572 F. Supp. 3d 470, 481 (N.D. Ill. 2021) (explaining that plaintiffs

have not met the redressability prong of the standing analysis when they sought

impermissible money damages under the APA). The court assumes, for the standing

analysis, it is plausible that plaintiffs are pleading the former and not the latter, which

means that the claims could be redressable by a favorable decision.

### B. Mootness

Defendants argue that the priority period's self-expiration renders plaintiffs'

claims for injunctive and declaratory relief moot because courts "can neither declare

unconstitutional nor enjoin the enforcement of a provision that is no longer in effect."

ECF No. 27 at 9 (internal citation omitted). They assert that the court should deem

---

[2] However, the court notes that upon analyzing the merits of an injunction, <u>infra</u> III.F., the court finds it likely that plaintiffs are actually seeking impermissible money damages. <u>See</u> 2d Amend. Compl. at 12 ¶ 2 (asking the court to "issue an injunction requiring Defendants to immediately fund all applications"); <u>id.</u> at 12 ¶ 4 (requesting the court to "compel Defendants to fund Plaintiff's [sic] applications); <u>id.</u> at 12 ¶ 3 (asking the court to "enter a temporary restraining order requiring Defendants to not disburse any of the unobligated and undisbursed RRF money until Defendants fully fund Plaintiffs' RRF applications."). As such, plaintiffs would fail to meet the redressability prong of the standing analysis. For the sake of this motion, and given that the outcome dismissing the case in whole is the same regardless, the court continues its analysis of the claims notwithstanding the plaintiffs' apparent failure to meet the redressability prong of the standing analysis.

plaintiffs' challenge to the priority period moot because the priority period expired on

May 24, 2021, and it no longer dictates how SBA processes RRF applications.  Id. at 10.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack

a legally cognizable interest in the outcome."  Porter v. Clarke, 852 F.3d 358, 363 (4th

Cir. 2017) (citation omitted).  "As long as the parties have a concrete interest, however

small, in the outcome, the case is not moot."  Ellis v. Brotherhood of Ry., Airline & S.S.

Clerks, 466 U.S. 435, 442 (1984).

One court considered this exact issue of mootness in a case filed by white male

restaurant owners who challenged the RRF priority period as unconstitutional on June 4,

2021.  Kingsley Rests., Inc. v. U.S. Small Bus. Admin., 2021 WL 8441778, at *1 (N.D.

Ga. Aug. 24, 2021).  That court found that the plaintiffs' requested relief was moot

because plaintiffs had "already either received all of their requested relief or seek relief

that is no longer available for the Court to grant."  Id. at *2.  In pertinent part, the priority

period expired before plaintiffs filed suit, both of their applications were processed before

the fund closed, and in the time since the suit was filed, the RRF program ran out of

money and ceased operations.  Id.

Plaintiffs allege that the SBA still has $180 million dollars available in it despite

the closure of that fund on July 2, 2021.  See 2d Amend. Compl. ¶ 38; ECF No. 26-2.

The court cannot say based on the pleadings that plaintiffs' claims for injunctive relief are

moot because, taken as true, that amount would be a sufficient sum to fund the plaintiffs'

awards—thus, the controversy as alleged is not moot.  See Reboot Macon, LLC v. United

States, 2022 WL 1411186, at *7 (M.D. Ga. May 4, 2022) (concluding plaintiffs'

constitutional claims for injunctive relief were not moot based on the allegations in the

complaint that the RRF still retained some funds for grant allocation).  However, if

defendants were to show evidence that the RRF program lacks funds, at that point

plaintiffs' claims would be moot.[3]

### C.  Fourteenth Amendment

Having determined that the issues of standing and mootness do not necessarily

warrant dismissal at this stage, the court turns to the merits of plaintiffs' constitutional

claims.  The Equal Protection Clause, which prohibits States from denying persons "the

equal protection of the laws," U.S. Const. amend. XIV, § 1, "keeps governmental

decisionmakers from treating differently persons who are in all relevant respects alike,"

Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  The Fourteenth Amendment applies to state

actors, while "actions of the federal government are reviewed under the Fifth

Amendment."  United States v. Al-Hamdi, 356 F.3d 564, 573 n.11 (4th Cir. 2004).

Plaintiffs have failed to state a cognizable constitutional claim because they

brought their constitutional claims against the federal government under the Fourteenth

Amendment.  See Asilonu v. Asilonu, 550 F. Supp. 3d 282, 298 (M.D.N.C. 2021)

---

[3] Despite the plaintiffs' complaint alleging that there remain significant funds in the RRF, ECF No. 26-2, another court examined that allegation and found that those funds had been disbursed.  See Chef Time 1520 v. Small Bus. Admin., 2022 WL 17820293, at *2 (D.D.C. Dec. 20, 2022).  Specifically, sometime after the RRF's depletion, about $83 million of previously obligated funds were returned to the SBA.  Id. In distributing that $83 million, the SBA considered neither the priority status nor the date on which the application was "fully approved."  Id.  Rather, the agency allocated the funds to the pool of fully approved applications in the order in which the applications were submitted—allocating $83 million to 169 eligible applicants, the last of which submitted its application at 1:19 PM on May 3, 2021.  Id.  This is outside of the record, and therefore the court cannot rely on the assertions or declarations in that case in making its determination.  For this reason, the court finds that the instant case is not moot because the record indicates that plaintiffs have alleged that the SBA still has funding available in the RRF and the government has not disputed that allegation.

(holding a party has failed to state a claim because "the Fourteenth Amendment is inapplicable to the federal government."). Plaintiffs are represented by counsel and therefore not accorded the lenient pleading standards available to pro se litigants, meaning the court is not required to construe their incorrect Fourteenth Amendment claims as claims brought pursuant to the Fifth Amendment. Cf. Crosby v. S.C. Dep't of Pub. Safety, 2017 WL 398352, at *2 (D.S.C. Jan. 30, 2017) ("Certainly, pro se complaints are construed liberally and identification of the wrong constitutional amendment . . . would be too technical a fault to warrant dismissal of a pro se claim."). As such, plaintiffs' Fourteenth Amendment due process and equal protection claims are dismissed for failure to state a claim.

### D. Title VI Claims

The United States may not be sued without its consent. United States v. Mitchell, 463 U.S. 206, 212 (1983). Thus, the court only has jurisdiction over claims against the United States to the extent that it has waived its sovereign immunity. Id. A waiver of immunity must be clearly evidenced in the language of a statue. F.A.A. v. Cooper, 566 U.S. 284, 290 (2012). The provisions of Title VI of the Civil Rights Act of 1964 do not waive sovereign immunity or provide grounds for liability against the United States. See, e.g., Hervey v. United States, 2019 WL 11690495, at *3 (D. Kan. Oct. 30, 2019). Thus, the court lacks subject matter jurisdiction over plaintiffs' Title VI claims against the federal government and they must be dismissed under Fed. R. Civ. P. 12(b)(1).

Even if the court were to consider the merits of plaintiffs' Title VI claim, it would find that plaintiffs have failed to state a claim for relief because Title VI claims cannot be brought against the federal government. Title VI of the Civil Rights Act of 1964

provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute defines "program or activity" and "program" to mean "all of the operations of" departments or instrumentalities of state or local governments, colleges and certain public systems of higher education, certain corporations and other private organizations, and other entities established by a combination of two or more of the foregoing entities. See id. § 2000–d–4a. The statutory definitions of "program or activity" and "program" do not include federal agencies. Rather, courts have consistently held that Title VI does not apply to programs directed by federal agencies. Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 191 (4th Cir. 1999) ("[Title VI] includes no express cause of action, and we decline to imply one against the federal government."); see also, e.g., Halim v. Donovan, 951 F. Supp. 2d 201, 207 (D.D.C. 2013) ("Title VI does not apply to programs conducted directly by federal agencies."); Colen v. United States, 2008 WL 2051697, at *15 (C.D. Cal. May 12, 2008), aff'd, 368 F. App'x 837 (9th Cir. 2010) (collecting cases finding no private right of action under Title VI against a federal entity); Cannon v. Univ. of Chi., 441 U.S. 677, 706 n.51 (1979) (suggesting that no right of action exists under Title VI against the federal agency funding the state or local recipient agency accused of discrimination). Because Title VI does not apply to the United States or the SBA—a federal administrative agency—it is also inapplicable to the agency's employees sued in their official capacities, which includes Guzman. Thus, the court also dismisses plaintiffs' claims brought under Title VI for failure to state a claim.

### E. Declaratory Judgments

Plaintiffs seek injunctive relief pursuant to The Declaratory Judgment Act. 28 U.S.C. § 2201. Namely, plaintiffs ask the court to "issue a declaratory judgment that Defendants' implementation and application of Section 5003 of [ARPA] violated [Keener's] constitutional rights." 2d Amend. Compl. at 12 ¶ 1. Defendants argue that since the priority period challenged by plaintiffs ended well almost two years ago, there are no circumstances warranting a declaratory judgement. ECF No. 27 at 12–13. Specifically, defendants explain that since the priority period has ended, "any new RRF awards will be distributed without considering an applicant's race or gender," meaning that "Plaintiffs face no ongoing or imminent injury, and their requested relief is unsupported in all events." Id.

The Declaratory Judgment Act provides that where an "actual controversy within its jurisdiction" exists, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A court may exercise jurisdiction over a declaratory judgment action when:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;
>
> (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and
>
> (3) the court does not abuse its discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc., v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004). The act, however, "is not an independent source of federal jurisdiction." Schilling v. Rogers, 363 U.S. 666, 678 (1960) (citation omitted). To consider a claim under the Declaratory Judgment Act, a federal court must have jurisdiction under another federal statute. Id.

19

In examining plaintiffs' request for a declaratory judgment, the court first notes that plaintiffs have not pled the elements of a declaratory judgment action with specificity.  See 2d Amend. Compl.  As such, the court takes the facts as alleged in the second amended complaint and determines from them whether a declaratory judgment is warranted.  The court finds that since it has dismissed plaintiffs' claims brought pursuant to the Fourteenth Amendment and Title VI—the only substantive claims pleaded in the second amended complaint—the court lacks jurisdiction for consideration of a declaratory judgment.  As such, plaintiffs' claims for relief pursuant to 28 U.S.C. § 2201 are dismissed for want of jurisdiction.

### F.  Administrative Procedure Act, 5 U.S.C. §§ 702, 706

Similarly, the APA is not a jurisdictional statute, so it does not provide a court with the initial authority to hear the case.  See Califano v. Sanders, 430 U.S. 99, 105 (1977) ("[T]he APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.").  28 U.S.C. § 1331 provides a jurisdictional basis—federal question jurisdiction—to hear APA claims and provides a general grant of subject matter jurisdiction to federal district courts in "all civil actions arising under the Constitution, laws, or treaties of the United States."  See Genesis Healthcare, Inc. v. Becerra, 39 F.4th 253, 262 (4th Cir. 2022) ("[Subject-matter jurisdiction] must be demonstrated independently [of the APA] by statutory authority, such as by 28 U.S.C. § 1331.").  The court finds that upon its dismissal of plaintiffs' Title VI claims and Fourteenth Amendment claims for relief for failure to state a claim, it now lacks subject matter jurisdiction over plaintiffs' remaining APA claims seeking injunctive relief

because no federal question claims remain.  As such, the court dismisses plaintiffs' APA claims for lack of jurisdiction.

However, even if the court were to reach the merits of plaintiffs' APA claims, the court would dismiss them under Rule 12(b)(6) for failure to state a claim because plaintiffs seek impermissible money damages.  Plaintiffs may not sue the United States or the SBA under the APA for money damages.  See Randall v. United States, 95 F.3d 339, 346 (4th Cir. 1996) ("The waiver of sovereign immunity in the APA is limited to suits seeking relief 'other than money damages.'"); Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 263 (1999) (holding that money damages fall outside the APA's waiver of sovereign immunity).  Conversely, the APA does allow the United States to be sued in the district courts for remedies other than money damages arising from an agency's unlawful action. 5 U.S.C. § 702; Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 215 (2012) ("The APA generally waives the Federal Government's immunity from a suit seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.").

Other courts that have considered this matter have, in some instances, decided that the plaintiffs successfully challenged the SBA's RRF fund distribution scheme, and forcing the agency to consider, and if approved, fund their grant application ahead of later-filed applications by priority applicants.  See, e.g., Vitolo, 999 F.3d at 366; Blessed Cajuns LLC v. Guzman, No. 4:21-00677, slip op., ECF No. 18 at 11 (N.D. Tex. May 28, 2021).  Similarly, in Reboot Macon, LLC v. United States, the court required plaintiffs to amend their complaint to plead and clarify their APA claims—noting specifically that the

court cannot require the SBA to disburse funds to the plaintiffs or seek any form of damages.  2022 WL 4872480, at *2–3 (M.D. Ga. Oct. 3, 2022).  Rather, the plaintiffs could only seek injunctive relief by requiring the SBA to process the plaintiffs' applications and, if approved, disburse funds.  Id. at *3.

However, based upon plaintiffs' second amended complaint, plaintiffs clearly seek impermissible money damages.  See 2d Amend. Compl. at 12 ¶ 2 (asking the court to "issue an injunction requiring Defendants to immediately fund all applications"); id. at 12 ¶ 4 (requesting the court to "compel Defendants to fund Plaintiff's [sic] applications); id. at 12 ¶ 3 (asking the court to "enter a temporary restraining order requiring Defendants to not disburse any of the unobligated and undisbursed RRF money until Defendants fully fund Plaintiffs' RRF applications.").  Since the plaintiffs are seeking impermissible money damages, the court dismisses plaintiffs' claims upon reaching defendants' motion to dismiss for failure to state a claim because money damages are not an appropriate remedy under the APA.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motions to dismiss without prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 13, 2023**
**Charleston, South Carolina**